FRED O. SEAVER, Respondent, *v.* LINDSAY LIGHT COMPANY, Appellant.

Contract — sales — meaning of letters " c. i. f." in contracts for sale and delivery of merchandise — action to recover damages for seller's failure to deliver goods purchased " c. i. f." to point of destination — damages difference between contract price and market price at place of sale and shipment.

1. The meaning of the letters " c. i. f." in an executory contract for the sale and delivery of merchandise is well understood in the commercial world. They mean the cost of the merchandise, insurance thereon, and freight charges to the point of destination. Unless there is something in a " c. i. f." contract to indicate to the contrary, the seller completes his contract when he delivers the merchandise called for to the shipper, pays the freight thereon to point of destination, and forwards to buyer bill of lading, invoice, insurance policy and receipt showing payment of freight.

2. Where defendant, a corporation doing business at Chicago, entered into a contract with plaintiff's assignor, doing business in London, England, the contract consisting of letters and cablegrams passing between their respective brokers, by which defendant agreed to sell and deliver to plaintiff's assignor a certain amount of a chemical in six monthly shipments at a specified price per pound " c. i. f." London dock, each shipment to be paid for in Chicago in advance, and three shipments were made and paid for according to the contract, but defendant refused to ship the balance, and plaintiff's assignor brings this action to recover the damages alleged to have been sustained, the sole issue being the proper amount of damages, it must be held, upon reading and construing together the correspondence and cablegrams constituting the contract, that it was the intention of both parties to the contract that the delivery was to be made at Chicago, and when defendant delivered to a carrier at that point, paid the

18

freight to the point of destination, and forwarded the other necessary documents, defendant had fully completed its part of the contract, and hence the measure of damages was the difference between the contract and market price at Chicago at the time of the breach of contract and not the difference between the contract and market price at London dock at that time. (*Staackman, Horschitz & Co.* v. *Cary*, 197 Ill. App. 601, disapproved.)

*Seaver* v. *Lindsay Light Co.*, 196 App. Div. 397, reversed.

(Argued March 23, 1922; decided April 18, 1922.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered April 21, 1921, reversing a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term, a jury having been waived, and granting a new trial.

*I. Maurice Wormser* and *Isaac Hyman* for appellant. The Trial Term was correct in holding that the place of delivery was Chicago and that, therefore, plaintiff's measure of damage was the difference between the contract price and the market price at Chicago, the place of delivery, at the time of the breach. The Appellate Division erred in holding that the measure of damages was the difference between the contract price and the market price at London, the point of destination. (*T. & M. Ins. Co.* v. *United States*, 237 U. S. 19; *Strones Bruks, etc.,* v. *Hutchison*, 1905 A. C. 515; *Mee* v. *McNider,* 39 Hun, 345; 2 Mechem on Sales, § 1736; *Ireland* v. *Livingston*, L. R. 5 H. L. 395; *Bowden* v. *Little*, 4 Comm. [Aust.] 1364; *Smith Co.* v. *Marano*, 267 Penn. St. 107; *Klipstein* v. *Dilsizian*, 273 Fed. Rep. 473; *Biddell Bros.* v. *Horst*, 1911, 1 K. B. 934; *Patterson* v. *Abekobie & Co., Lim.*, 197 App. Div. 528; *Schopelocher* v. *Esgee Co.*, 197 App. Div. 781.)

*Hiram R. Steele* and *George E. Miner* for respondent. The settled rule as to measure of damages for breach of contract of sale is the difference between the contract

1922.]          Opinion, per McLAUGHLIN, J.        [233 N. Y. 273]

price and the value of the goods at the place of ultimate delivery named in the contract. (*Staackman, Horschitz & Co.* v. *Carey,* 197 Ill. App. 601.) The place of delivery referred to in the rule as to measure of damages for breach of contract of sale c. i. f. by the seller is the place of ultimate destination named in the contract — the same being the place at which the buyer would have received the goods if the seller had performed the obligations of his contract. (Benj. on Sales, 718.)

McLAUGHLIN, J. The defendant, in October, 1915, was located and doing business at Chicago, Ill., and plaintiff's assignor was located and doing business in London, England. About the time named they entered into a written contract, consisting of letters and cablegrams passing between their respective brokers, by which defendant agreed to sell and deliver to plaintiff's assignor 5,544 pounds of thorium in six monthly shipments at the price of $4 per pound, c. i. f. London dock. Each shipment was to be paid for in Chicago in advance. Three shipments were made and paid for according to the contract, but defendant refused to ship the balance, 2,772 pounds. This action was thereupon brought to recover the damages alleged to have been sustained. At the trial the sole issue was the proper measure of damages, the plaintiff contending it was the difference between the contract and market price at London dock at the time of the breach, and defendant contending it was the difference between the contract and market price at Chicago at that time.

If the former contention were correct, then plaintiff was entitled to recover $8,316, besides interest; if the latter contention were correct, then he was entitled to recover only $868.50, besides interest, the different amounts being the difference between the market price at London dock and Chicago at the time of the breach.

The trial court held that defendant's contention was

correct, and thereupon gave judgment for the plaintiff in accordance therewith. Plaintiff appealed to the Appellate Division, which reversed the judgment and ordered a new trial, holding that the measure of damage was as contended by plaintiff. Defendant now appeals to this court.

The meaning of the letters c. i. f. in an executory contract is, and at the time the contract in question was made were, well understood in the commercial world. They mean the cost of the merchandise, insurance thereon, and freight charges to point of destination. (*Thames & Mersey Ins. Co., Ltd.,* v. *U. S.,* 237 U. S. 19.) Unless there is something in a c. i. f. contract to indicate to the contrary, the seller completes his contract when he delivers the merchandise called for to the shipper, pays the freight thereon to point of destination, and forwards to the buyer bill of lading, invoice, insurance policy and receipt showing payment of freight. (*Mee* v. *McNider,* 109 N. Y. 500; *Smith Co., Ltd.,* v. *Marano,* 267 Penn. St. 107; *Ireland* v. *Livingston,* L. R. 5 H. L. 395; *Klipstein* v. *Dilsizian,* 273 Fed. Rep. 473; Williston on Sales, secs. 407, 408; Mechem on Sales, vol. 2, sec. 1736.)

Where was the delivery of the thorium in the present case to be made? Was it at Chicago or at London dock? If delivery were to be made at the former place, then the measure of damage was as found by the trial court. If at London dock, then it was as found by the Appellate Division.

I am of the opinion that the trial court was right. When the correspondence and cablegrams are all construed together, as they must be, then it seems to me they clearly indicate an intention on the part of both parties that the delivery was to be made at Chicago and when defendant delivered to a carrier at that point, paid the freight to point of destination, and forwarded the other necessary documents, he had fully completed his part of the contract. Failure to make delivery at that place

obligated it to respond in damages in an amount corresponding to the difference there between the contract and market price of thorium at the time of the breach plus the cost of insurance and freight. There certainly is nothing in this contract to indicate that a delivery was to be made only at point of destination. Concededly if the merchandise had been lost intermediate the delivery to the carrier and point of destination, the loss would have fallen upon the buyer and not upon the seller. That Chicago was to be the place of delivery seems to me not only to follow from the contract itself, but especially from that provision of it which required each shipment to be paid for in advance at Chicago. The trial court found as a fact that was the meaning and intention of the agreement. This finding is sustained by the evidence and a finding to the contrary would be against the evidence.

In reaching the above conclusion, *Staackman, Horschitz & Co.* v. *Cary* (197 Ill. App. 601), upon which the respondent principally relies, has not escaped my attention. I do not think that authority correctly states the law. It certainly is not binding upon this court and ought not to be followed.

The judgment appealed from should be reversed and the judgment of the trial court reinstated, with costs in this court and in the Appellate Division.

HISCOCK, Ch. J., HOGAN, CARDOZO, POUND, CRANE and ANDREWS, JJ., concur.

Judgment reversed, etc.